IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATHAN PARK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-402-S-BN |
| | § | |
| TRAVIS FOX, ALLREALMS, INC., | § | |
| STATE BIRD CORP., BRYANT | § | |
| ANDRUS, MODERN FORTRESS, | § | |
| INC., MODERN EMINENCE LLC, | § | |
| and MICHELLE FOX, | § | |
| | § | |
| Defendants. | § | |

**AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Karen Gren Scholer. *See* Dkt. No. 7.

Defendant Modern Eminence LLC has filed an Emergency Motion to Expunge Notice of Lis Pendens, *see* Dkt. No. 6, "pursuant to Texas Property Code § 12.0071(c)(1) & (2) and requests that this Court vacate the notice of lis pendens filed by Plaintiff Nathan Park in connection with this removed action because Plaintiff: (1) has failed to plead a 'real property claim' within the meaning of the Texas Property Code; and (2) cannot prove the probable validity of any real property claim by a preponderance of the evidence," *id.* at 1.

Modern Eminence "further requests relief on an emergency basis because Plaintiff's improperly filed lis pendens threatens to derail a proposed land sale if the

lis pendens is not expunged before March 12, 2024." *Id.*

Based on the circumstances presented, the Court set an expedited briefing schedule. *See* Dkt. No. 8.

Park's expedited response was not filed on the Court's docket on February 24, 2024 but was served on Modern Eminence's counsel that day, and Modern Eminence attached the response materials to its expedited reply that it filed on February 25, 2024. *See* Dkt. No. 11 (reply) & 11-1 (response). The undersigned will treat as Park's response the materials that Modern Eminence attached to its reply.

For the reasons explained below, the Court should grant Defendant Modern Eminence LLC's Emergency Motion to Expunge Notice of Lis Pendens [Dkt. No. 6].

## Background

Modern Eminence explains that Park "filed suit against Defendants in the 354th Judicial District for Hunt County, Texas alleging fraud and civil conspiracy and seeking money damages." Dkt. No. 6-1 at 5.

According to Modern Eminence, Park also "filed a notice of lis pendens against real property located in Caddo Mills, Texas, even though Plaintiff has never had, and does not claim, any interest in the real property itself, and even though Plaintiff's lawsuit seeks no transfer of title or any other real property interest even if Plaintiff were to prevail." Dkt. No. 6-1 at 5. Modern Eminence asserts that, "[i]nstead, Plaintiff has filed the lis pendens for the specific, and wholly improper, purpose of preventing sale of the Caddo Mills property because of Plaintiff's supposed concern that Defendants will 'move' the money proceeds from such a sale out of Texas." *Id.*

Modern Eminence also explains that it "seeks expunction on an emergency basis because Plaintiff's improperly filed lis pendens has already caused one nearly-consummated sale of the Caddo Mills property to fall through at the last moment" and "[t]hat prospective purchaser has agreed to a 30-day extension of the closing date, but will rescind its offer if the lis pendens is not expunged." Dkt. No. 6-1 at 6; *accord* Dkt. No. 6-2 at 8-9 of 38.

In Plaintiff's Response to Defendant Modern Eminence, LLC's Emergency Motion to Expunge Notice of Lis Pendens, Park does not defend his notice of lis pendens but rather explains that he "is not attempting to nor requesting to stop the sale of the Caddo Mills Property by Modem Eminence." Dkt. No. 11-1 at 2 of 53. Park further explains that he "is not seeking that the sale of the Caddo Mills Property not occur, but that he has a constructive trust in the $250,000 and that $250,000 of the proceeds from the sale of the Caddo Mills Property should be put in escrow until there is a full determination in this matter." *Id.* at 6 of 53.

And Park reports that he "has filed together with this Response: (1) Plaintiffs Amended Complaint (which includes a request for the imposition of a constructive trust as to the $250,000 paid by Park to AllRealms, Inc.; and (2) Plaintiffs Motion for a Temporary Restraining Order and Preliminary Injunction, seeking that the Court enjoin the distribution of $250,000 of the proceeds of the anticipated sale of the Caddo Mills Property to Defendants, and that $250,000 of the proceeds be placed in the Registry of the Court or some other escrow, until the claims in the suit are determined or further Order of the Court." Dkt. No. 11-1 at 2 of 53.

Park's response does not ask the Court to deny Modern Eminence's Emergency Motion to Expunge Notice of Lis Pendens but instead "prays that the Court enter a Temporary Restraining Order/Preliminary Injunction as to the distribution of $250,000 of the proceeds of the sale of the Caddo Mills Property as requested." Dkt. No. 11-1 at 6 of 53.

In reply, Modern Eminence argues that Park's "response and supporting materials – which include an Amended Complaint and affidavits submitted in support of a separately-filed Motion for Temporary Restraining Order – simply confirm that the lis pendens must be expunged." Dkt. No. 11 at 1-2 (footnote omitted).

## Legal Standards

The Supreme Court of Texas has explained that "[a] notice of lis pendens broadcasts 'to the world' the existence of ongoing litigation regarding ownership of the property" and that, "[w]hen the notice is properly filed, even a subsequent purchaser for value does not take the property free and clear." *Sommers for Alabama & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 753 (Tex. 2017) (cleaned up). "[A] lis pendens functions to provide constructive notice, avoid undue alienation of property, and facilitate an end to litigation." *Id.* (cleaned up).

"Texas state law controls the validity of a lis pendens in federal court." *Garza-Selcer v. 1600 Pac. Subtenant, LLC*, Civ. A. No. 3:15-cv-3791-N, 2016 WL 11474103, at *8 (N.D. Tex. Aug. 30, 2016) (citing 28 U.S.C. § 1964).

The Texas Property Code provides that, "during the pendency of an action involving title to real property, the establishment of an interest in real property, or

the enforcement of an encumbrance against real property," a party may file a notice that the action is pending. TEX. PROP. CODE § 12.007(a).

"But by its plain terms, the lis pendens statute makes clear that the procedure is available only to 'a party to the action who is seeking affirmative relief.'" *U.S. Bank Nat'l Ass'n as Tr. to Bank of Am., Nat'l Ass'n v. Bates*, No. 21-11251, 2023 WL 187680, at *1 (5th Cir. Jan. 16, 2023) (quoting TEX. PROP. CODE § 12.007(a)). "A lis pendens does not operate as a lien on property," and it "'operates only during the pendency of the lawsuits.'" *Pruitt v. Bank of N.Y. Mellon*, Civ. A. No. 3:15-cv-2359-L, 2015 WL 6157319, at *1 (N.D. Tex. Oct. 19, 2015) (first citing *In re Miller*, 433 S.W.3d 82, 85 (Tex. App. – Houston [1st Dist.] 2014, no pet.); and then quoting *Berg v. Wilson*, 353 S.W.3d 166, 180 (Tex. App. – Texarkana 2011, pet. denied)).

And a "party to an action in connection with which a notice of lis pendens has been filed" may "apply to the court to expunge the notice." TEX. PROP. CODE § 12.0071(a). And the Court

> shall order the notice of lis pendens expunged if the court determines that: (1) the pleading on which the notice is based does not contain a real property claim; (2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim; or (3) the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under [Texas Property Code §] 12.007(d).

TEX. PROP. CODE § 12.0071(c); *accord In re Huffines Retail Partners, L.P.*, 978 F.3d 128, 133 (5th Cir. 2020) (explaining that, "under current law, a party may seek to overturn a lis pendens based on either (1) the pleadings' failure adequately to assert a 'real property claim,' or (2) failure to prove by a preponderance the 'probable validity of the real property claim.'" (quoting TEX. PROP. CODE § 12.0071(c)).

To establish that "the pleading on which the notice is based" contains "a real property claim" under Section 12.0071(c)(1), a claimant must "demonstrate that the underlying litigation is 'an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property.'" *In re Moreno*, NO. 14-14-00929-CV, 2015 WL 225049, at *2 (Tex. App. – Houston [14th Dist.] Jan. 15, 2015, orig. proceeding) (quoting TEX. PROP. CODE § 12.007(a)).

"A lis pendens notice is limited to situations where the title to the property is directly implicated by the results of the lawsuit." *Matter of Alabama & Dunlavy, Ltd.*, 983 F.3d 766, 778 (5th Cir. 2020). "In other words, the property against which the lis pendens is filed must be the subject matter of the underlying lawsuit." *Maniatis v. SLF IV - 114 Assemblage, L.P.*, NO. 06-18-00061-CV, 2019 WL 1560680, at *4 (Tex. App. – Texarkana Apr. 11, 2019, rev. denied) (quoting *In re Collins*, 172 S.W.3d 287, 293 (Tex. App. – Fort Worth 2005, orig. proceeding)).

The United States Court of Appeals for the Fifth Circuit has explained that a court may "consider[] the pleadings alone" when determining whether "the pleading on which the notice is based" contains "a real property claim." *Huffines*, 978 F.3d at 133. And the Fifth Circuit held that a claim was not a "real property claim" where "the pleading d[id] not 'involve' [] actual titles to real property or the establishment of a direct interest in real property" and did "not pray for the real property titles to be transferred to them" and where a claim for specific performance of "contracts for entities that own real property is not specific performance of a contract for deed or

specific performance to transfer deeds or specific performance to recognize ownership of real property subject to a title dispute." *Id.* (cleaned up).

The Fifth Circuit also explained that, under Texas law, where a claim that does "not 'involve' title to real property and instead implicate[s] the real property only 'collaterally,'" "notices of lis pendens [have been] held void or impermissible." *Id.* (cleaned up). The Fifth Circuit noted that a Texas court had held that a "lis pendens is void" where the "claims pled would only address an interest in the partnership, [and] [a]n interest in the partnership is distinct from an interest in real estate which may be owned by the partnership." *Id.* (cleaned up).

Even if the Court determines that the claimant pleaded a real property claim, the Court must expunge the lis pendens if the claimant fails to establish "the probable validity of its claim by a preponderance of the evidence." *In re I-10 Poorman Invs., Inc.*, 549 S.W.3d 614, 617 (Tex. App. – Houston [1st Dist.] 2017, orig. proceeding) (citation omitted).

## Analysis

The Court should grant Modern Eminence's motion because Park has not established that this lawsuit "involv[es] title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property." TEX. PROP. CODE § 12.007(a). That is, Plaintiff's Amended Original Petition [Dkt. No. 1-1] does not contain a "real property claim," requiring the Court under Texas Property Code § 12.0071(c)(1) to expunge the notice of lis pendens.

And Plaintiff's Amended Original Petition – and not any amended complaint

that Park may file now or later in this Court – is "the pleading on which the notice

[of lis pendens] is based" and to which the Court must look for purposes of Texas

Property Code § 12.0071(c)(1). TEX. PROP. CODE § 12.0071(c)(1). And that is because

Plaintiff's Amended Original Petition "was [Park's] live pleading at the time [he] filed

[his] notice of lis pendens." *Garza-Selcer v. 1600 Pac. Subtenant, LLC*, No. 3:15-cv-

3791-N, 2016 WL 11474103, at *8 (N.D. Tex. Aug. 30, 2016); *see In Re Saleh Elisa &*

*Carzone Investors, Inc.*, No. 05-21-00370-CV, 2022 WL 391505, at *3-*4 (Tex. App. –

Dallas Feb. 9, 2022, orig. proceeding).

    In Plaintiff's Amended Original Petition, Park raises claims for fraud and civil

conspiracy. Each of the claims are based on the same allegations:

> 12. In or about May and June 2023, Park was approached by
> Travis Fox and Andrus about getting involved in investing money
> relating to projects and potential projects they were working on and that
> Park's Native American heritage may be useful to them. Travis Fox,
> Michelle Fox and Andrus and an individual named Chris Gergen came
> to Texas on multiple occasions and met with Park in Hunt County and
> even came to Park's home in Heath, Texas for further discussions as to
> Park investing money with them. In these meetings with Park, they
> described various investments and projects that they were working on
> and that they needed someone with Native American heritage involved.
> Andrus represented to Park that he was a principal with State Bird
> Corp. and was involved in soliciting investments and providing
> investment advice. Andrus did not disclose that he had a formal
> relationship with AllRealms, Modem Eminence and Modern Fortress,
> but it was later learned that Andrus was on the Board of Directors of
> AllRealms and had other involvement with Modem Eminence and
> Modem Fortress.
> 13. In these meetings, Travis Fox stated that he was an owner of
> AllRealms and related companies, including Modem Fortress, Modem
> Eminence, and Modem Fortress Operations, LLC. (Modem Fortress
> Operations, LLC subsequently entered into a lease for commercial
> property in Hunt County, Texas, owned by Park's company Park
> Construction & Building Maintenance, LLC, and Modem Fortress
> Operations, LLC, then defaulted on the lease and paid nothing and such

matter is in litigation in Hunt County.) Michelle Fox stated that she was involved in these entities and was CEO. Travis Fox, Michelle Fox and Andrus told Park that they had many other investors and funds and would use Park's funds in projects and future projects, and keep him advised as to such matters. Based on the various representations that they made to Park, Park was induced to and delivered on or about June 20, 2023, a $250,000 Cashier's Check made payable to AllRealms, LLC and deposited it into an account of AllRealms, LLC, at the direction of Andrus and State Bird.

14.    Thereafter, Defendants' communications with Park significantly decreased. Park frequently requested information and documentation from Defendants about the $250,000 and other financial information as to Defendants and projects. Park was initially put off by Defendants and was told that he would get some information, but thereafter Defendants went silent as to Park's requests. Park then demanded the return of the $250,000, and Defendants initially responded that the $250,000 would be returned to Park, but Defendants again went silent.

15. On or about October 13, 2023, Modem Eminence purchased real property near Highway 66 in Caddo Mills, Hunt County, Texas, for $1,000,000 (the "Caddo Mills Property"). It is believed that all or part of the $250,000 paid by Park was used to purchase the Caddo Mills Property. It has been recently learned that after Park demanded the return of the $250,000, Defendants hastily began attempts to sell the Caddo Mills Property, likely so that such assets could be moved out of Texas and to avoid the claims of Park. Additionally, Park has learned that his funds may have also been used by Defendants for other improper purposes.

16. Park also has learned that Travis Fox and his associates along with Andrus and others at State Bird Corp. are, without authority from Park, using Park's name and the name of his company – Park Construction & Building Maintenance, LLC – to try and solicit investors to AllRealms, Modem Fortress and/or Modem Eminence, despite Park advising them not to disclose.

17. Park has further learned that Defendants have used Park's name, without any authority, for a submission of an application for public funds to the Department of Economic Development of the State of Nebraska. Park demanded information from Andrus and State Bird as to why his name was being used without his authority or consent, and again Park has received no response whatsoever.

Dkt. No. 1-1 at 17-19 of 27.

On the basis of these allegations, Park asserts a claim for fraud, alleging that

"Defendants have made various misrepresentations to Park, inducing him to pay them $250,000"; that, "[a]s a result of the Defendants' actions, Park has been damaged"; and that "Park additionally seeks exemplary damages against Defendants for their actions." Dkt. No. 1-1 at 19 of 27.

And Park asserts a claim for conspiracy, alleging that "Defendants have acted together with the purpose of fraudulently obtaining $250,000 from Park"; that, "[a]s a result of such actions, Park has been damaged"; and that "Park additionally seeks exemplary damages against Defendants for their actions." Dkt. No. 1-1 at 19 of 27.

Although Park makes allegations regarding his investment of $250,000 in a company relating to projects and potential projects that Defendants were working on, *see* Dkt. No. 1-1 at 17-18 of 27, Park does "not pray for the real property title[] to be transferred to" him, *Huffines*, 978 F.3d at 133.

In Plaintiff's Amended Original Petition, Park does allege that "Modem Eminence purchased real property near Highway 66 in Caddo Mills, Hunt County, Texas, for $1,000,000 (the 'Caddo Mills Property')"; that "all or part of the $250,000 paid by Park was used to purchase the Caddo Mills Property"; and that, "after Park demanded the return of the $250,000, Defendants hastily began attempts to sell the Caddo Mills Property, likely so that such assets could be moved out of Texas and to avoid the claims of Park." Dkt. No. 1-1 at 18 of 27.

But, in Plaintiff's Amended Original Petition, Park does not seek a judgment finding that he has an interest in any real property. As Modern Eminence asserts, Park "does not allege that he ever had a personal ownership interest in the Caddo

Mills [P]roperty and does not, in his requested relief, seek to restore any interest he claims he once had in the Caddo Mills Property." Dkt. No. 6-1 at 13-14.

Rather, Park "seek[s] only monetary 'damages, exemplary damages, attorneys' fees, pre- and post-judgment interest, and Court costs.'" Dkt. No. 6-1 at 14 (quoting Dkt. No. 1-1 at 20 of 27). And the remedy that Park seeks distinguishes this case from *In re Collins*, 172 S.W.3d 287, a case also involving a fraud claim.

The *Collins* plaintiffs alleged that they had been defrauded out of an interest in a property and filed notices of lis pendens. *See id.* But, in addition to money damages, the *Collins* plaintiffs – unlike Park – sought "a declaratory judgment that they own a 50 percent interest in the … property …. and a constructive trust on 50 percent of the … property." *Id.* Because the *Collins* plaintiffs sought an answer to "the question of whether [they had] a direct interest in the … property," *see id.* at 297, "[t]itle to the property was fundamentally at issue," and the lis pendens were proper, *In re Huffines*, 978 F.3d at 134 (discussing *In re Collins*).

But, in this case, no matter how Park's claims come out, no ownership interests in any real property will be established, title to real property will not change hands, and no encumbrances against any real property will be enforced. *Accord Pelletier Mgmt. & Consulting, LLC v. InterBank*, No. 6:21-CV-00022, 2022 WL 614917, at *2-*3 (S.D. Tex. Mar. 2, 2022); *Fu v. Chin*, No. 3:18-cv-2066-N-BN, 2021 WL 1877064, at *2-*3 (N.D. Tex. Apr. 8, 2021), *rep. & rec. adopted*, 2021 WL 1868640 (N.D. Tex. May 10, 2021).

And, so, as alleged, the Caddo Mills Property is, at most, "collaterally"

implicated in this case, which cannot support a proper notice of lis pendens. *In re Huffines*, 978 F.3d at 133. As Modern Eminence argues, Park appears to have "filed a lis pendens clouding title to the Caddo Mills [P]roperty for the … purpose of ensuring that there is cash available to satisfy a money judgment against the Defendants should he win this case," but "[t]hat kind of claim cannot support a lis pendens under Texas law." Dkt. No. 11 at 4.

Because Park has not pleaded a "real property claim" in Plaintiff's Amended Original Petition [Dkt. No. 1-1], the pleading on which the notice of lis pendens is based, the Court should expunge the notice of lis pendens under Texas Property Code § 12.0071(c)(1).

And this would be the required result even if the Court looked to Plaintiff's Amended Complaint – which, while adding requests for the imposition of a constructive trust and for injunctive relief, otherwise seeks the same relief as in Plaintiff's Amended Original Petition. *See* Dkt. No. 11-1 at 8-13 of 53. As Modern Eminence correctly notes, Park's seeking "a constructive trust on real property, or on the proceeds from the sale of real property, as security for a potential future money judgment" and seeking "injunctive relief to escrow a portion of the sales proceeds" do not amount to pleading any "real property claim" for purposes of Texas Property Code § 12.0071(c)(1). Dkt. No. 11 at 4-5 (citing *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995) (orig. proceeding) (per curiam) ("[P]laintiffs seek a constructive trust in the purchased properties only to satisfy the judgment they seek against [defendant]. As such, the interest is no more than a collateral interest in the property. Therefore

the notices of lis pendens are improper." (internal citations omitted)); *Pruitt*, 2015 WL 6157319, at *3. Even under Plaintiff's Amended Complaint, and even if Park "were to win every claim in this case outright, he would be entitled, at most, to money damages," and he does not "claim that he ever had an interest in the Caddo Mills [P]roperty that he is seeking to restore by this action." Dkt. No. 11 at 5-6.

Modern Eminence also asserts that, "[g]iven the total lack of factual or legal predicate for the filing of the lis pendens," the Court should "award it the attorneys' fees it incurred in bringing this motion." Dkt. No. 6-1 at 17.

But federal courts "follow the 'American Rule' under which [e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Oliver v. Arnold*, 3 F.4th 152, 163 (5th Cir. 2021) (cleaned up). And Modern Eminence "identifie[s] no source of authority that would permit [the Court] to award attorneys' fees" for bringing or prevailing on this motion to expunge. *Id.*

## Recommendation

For the reasons and to the extent explained above, the Court should grant Defendant Modern Eminence LLC's Emergency Motion to Expunge Notice of Lis Pendens [Dkt. No. 6].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 25, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE